J-A06024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

S.C.,

           Appellant

         v.

A.C. & L.C.,

           Appellees

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2601 EDA 2016

Appeal from the Order Entered July 19, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2007-16468

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                          **FILED MAY 11, 2017**

S.C. ("Mother") appeals from the order entered July 19, 2016, awarding primary physical custody and sole legal custody of her daughter, S.C. ("Child"), born in June of 2006, to Child's maternal grandparents, A.C. and L.C. ("Grandparents"), and awarding partial physical custody of Child to Mother.[1]  We affirm.

---

[1] We advise the trial court that Child's father is a necessary party to this custody action, and that our Rules of Civil Procedure require the court to enter an order joining him.  **See** Pa.R.C.P. 1915.6(a)(1) ("If the court learns from the pleadings or any other source that a parent whose parental rights have not been previously terminated . . . is not a party to the action, it shall order that the person be joined as a party.").  However, while Mother is aware of Child's father's identity, Mother has refused to identify him. Complaint, 7/12/07, at 4; N.T., 6/21/16, at 123-124.  Thus, we proceed to review the custody order at issue.

The trial court summarized the factual and procedural history of this matter as follows.

Grandparents initially received custody of [Child] when she was an infant through the state of New York's family court since both she and Mother tested positive for drugs at the time of [Child's] birth. On July 17, 2007 Mother filed a custody petition seeking full custody of [Child] alleging that she was the primary financial support and caregiver for the child. However, it does not appear that any further action was taken on this petition.

On March 18, 2015 Grandparents filed an Emergency Petition for Custody seeking temporary and sole physical custody of [Child]. This filing was precipitated after Grandparents were contacted by Puerto Rican police informing them that [Child] had been seen on the beach alone for a few days and that Child Protective Services was opening a case.[2] Mother had taken [Child] to Puerto Rico for what she told Grandparents was going to be a one week vacation but instead remained there for seven weeks. Grandparents immediately flew down to Puerto Rico where [Child] was released into their custody. On March 18, 2015 the undersigned entered an order granting temporary sole legal and sole physical custody of [Child] to Grandparents. Pursuant to the March 18, 2015 order, Grandparents were given permission to return with the child from Puerto Rico to Pennsylvania. Additionally, the order prohibited Mother from having any kind of contact with the child unless agreed to by Grandparents and was further prohibited from removing her from school.

_____

[2] Grandparents presented a slightly different account of Mother's trip to Puerto Rico in their emergency petition for custody as compared to their testimony at the June 21, 2016 hearing. In their petition, Grandparents averred that Mother was in Puerto Rico for seven weeks, rather than three months. Emergency Petition for Custody, 3/18/15, at ¶ 5; N.T., 6/21/16, at 43. Grandparents further averred that they learned of Child's whereabouts when they received a phone call from the Puerto Rican police, rather than a concerned bystander. Emergency Petition for Custody, 3/18/15, at ¶ 7; N.T., 6/21/16, at 42, 44. It appears that the trial court accepted the former version. Findings of Fact, 7/19/16, at 1.

On June 10, 2015 Mother filed an Emergency Petition to Modify Custody. In her petition, Mother denied all of Grandparents' allegations and asserted that she was [a] fit and able parent. The Court deemed Mother's petition to not be an emergency. On August 6, 2015 the parties entered into a Temporary/Interim Agreed Order Without Prejudice. Grandparents retained primary physical and legal custody of [Child] and Mother received supervised custodial visits with [Child] as follows: every Monday from 7:00 p.m. until 9:00 p.m., every Saturday from 4:00 p.m. to 8:00 p.m. and every Sunday from noon to 5:00 p.m. Custodial exchanges were to occur at a location mutually agreed upon between the parties. Additionally, the parties were required to notify the other party of a schedule change at least 48 hours in advance unless there was an emergency. [C]hild was also permitted to have daily reasonable phone contact with Mother.

In March of 2016, the Court entered an Order permitting Mother to have visitation with [Child] from 4:00 p.m. to 8:00 p.m. on Saturdays and from noon to 5:00 p.m. on Sundays with all other aspects of interim order from August 6, 2015 remaining. On May 27, 2016 Mother filed a Motion for Contempt alleging that Grandparents were preventing her from having visitation with [Child].

The parties appeared before the undersigned on June 21, 2016 for a one day protracted hearing.

Findings of Fact, 7/19/16, at unnumbered 1-2 (footnote omitted).

Following the hearing, on July 19, 2016, the trial court entered an order awarding primary physical custody and sole legal custody of Child to Grandparents, and awarding partial physical custody to Mother each Saturday from 4:00 p.m. to 8:00 p.m. and each Sunday from noon to 5:00 p.m. In addition, the court awarded Mother an overnight visit on the third

weekend of each month, from Friday after school until 8:00 p.m. on Saturday.[3]

Mother timely filed a *pro se* notice of appeal on August 4, 2016, along with a concise statement of errors complained of on appeal.[4] Mother now raises the following issues for our review:

> 1. Did the Trial Court err as a matter of law in applying the incorrect legal standard in a child custody case where grandparents sought custody of a child from that child's biological mother?
>
> 2. Did the Honorable Trial Court abuse its discretion in awarding custody of the child to the grandparents and not to her Mother in the absence of a specific finding of unfitness?

Mother's Brief at 4.

We consider these issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent

_____

[3] The trial court's desired custody award is somewhat unclear, as the order on appeal contains a typographical error. The order states that when Mother exercises her overnight visit with Child, "the weekend visitation schedule in point (iii) will not apply on that weekend[.]" Order, 7/19/16, at 1. However, there is no "point (iii)" in the order. It appears that the court may have been referring to point (i), which sets forth the parties' normal weekend custody schedule. Additionally, while the trial court did not specifically address Mother's motion for contempt, we are satisfied that the trial court denied the motion in light of its conclusions. Order, 7/19/16, at 9-10.

[4] Mother was *pro se* during the custody hearing. However, she is represented by counsel on appeal.

evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a):

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court addressed each of the Section 5328(a) factors in its findings of fact accompanying the order on appeal. The court summarized its decision to award primary physical and sole legal custody of Child to Grandparents as follows:

> It is obvious to the Court that despite the immense tension and resentment that characterizes the parties' relationships with each other, they are united in their deep love and affection for [Child].
>
> The Court understands Mother's desire as [Child's] biological parent to retain primary custody of her child. The Court appreciates Mother's free spirit and her unique approach to life. However, at this time the Court finds that it is not in [Child's] best interest to grant Mother primary and/or sole physical and legal custody. The Court has serious doubts about Mother's ability to provide [Child] with a stable living environment and attend to her daily needs since she appears neither to have steady employment nor reliable and/or permanent housing. It is also evident to the Court that Mother has chosen to exercise her visitation with [Child] based on her own convenience. Furthermore, Mother presented little to no evidence that she undertakes any kind of parental obligation on [Child's] behalf (i.e. assisting with homework or attending [Child's] parent teacher conferences, extracurricular events or doctor's appointments) or has ever made any effort to do so. Grandparents have provided [Child] with the solid family structure and stable home environment that a young, developing child needs. The Court commends Grandparents for their exemplary efforts in raising [Child] and their willingness to allow Mother to be a part of [Child's] life despite the high level of conflict between them. The Court urges Grandparents to continue to accommodate Mother's requests to visit with [Child] as much as they reasonably can and promote [Child's] bond with her Mother.
>
> The Court would like to emphasize that the significant efforts Grandparents have made to care for [Child] is borne not only out of a love for their granddaughter but for their daughter

as well. Regardless of Mother's feelings towards Grandparents, she is incredibly fortunate to have parents who are so committed to ensuring that [Child] has the resources she needs to excel in school and her extracurricular activities.

Findings of Fact, 7/19/2016, at 9-10 (footnote omitted).

In her first issue on appeal, Mother argues that the trial court erred by failing to apply the presumption that custody should be awarded to her rather than Grandparents who are third parties. Mother's Brief at 9-12. Mother waived this issue by failing to include it in her concise statement of errors complained of on appeal. *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived.").[5]

In her second issue, Mother argues that the trial court abused its discretion by awarding custody of Child to Grandparents. Mother's Brief at 12-18. Mother challenges several of the court's factual findings, including that Mother does not have an appropriate living arrangement and lacks stability. *Id.* at 12-14. Mother also claims that the court overlooked evidence showing that she did well raising Child for the first ten years of

_____

[5] Mother is correct that "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent." Mother's Brief at 9. However, the presumption in favor of the parent may be rebutted "by clear and convincing evidence." 23 Pa.C.S. § 5327. Thus, even if Mother had not waived this issue, the record contains overwhelming evidence in support of the trial court's decision to award primary physical and sole legal custody of Child to Grandparents rather than Mother. We detail this evidence *infra*.

Child's life. *Id.* at 14-16. Mother contends that the court improperly based its decision on Grandparents' superior financial resources. *Id.* at 16-17.

Our review of the record belies Mother's claim. During the custody hearing, Child's grandfather, A.C. ("Grandfather"), testified at length concerning Mother's history of instability and erratic behavior, which culminated in her trip to Puerto Rico in December of 2015. N.T., 6/21/16, at 43. Mother initially informed Grandfather that she and Child would be travelling to Puerto Rico for one week, but they stayed for several weeks. *Id.* Grandfather explained that he began receiving phone calls from Child's school due to her lengthy absence. *Id.* Grandfather attempted to call Mother on her cellphone, but she failed to return his calls. *Id.* When Mother did return Grandfather's calls, she claimed that she and Child would be returning to Pennsylvania in two days. *Id.* However, they did not return. *Id.*

According to Grandfather, he remained unable to locate Mother and Child until he received a telephone call from a woman in Puerto Rico who informed him that she had seen Child alone on the beach "for a couple of days," and that she reported it to the police. N.T., 6/21/2016, at 42, 44. Grandfather spoke with the police in Puerto Rico, and a police officer informed Grandfather that he had received a complaint concerning Child, but that "he didn't have a chance to go pick her up because she was on the beach on an island and she couldn't go anywhere except by ferry." *Id.* at

42, 47. The officer informed Grandfather that Child would be sent to social services and probably placed in foster care. *Id.* at 44, 47. Grandfather obtained a custody order and flew immediately to Puerto Rico in order to retrieve Child. *Id.* at 42, 44, 47. Grandfather spoke to Child after this incident; Child informed Grandfather that she was not attending school while in Puerto Rico, and that "we were just staying on the beach all day. I sleep on the beach." *Id.* at 45. Meanwhile, Mother remained in Puerto Rico for another month, until Grandfather paid for her return trip to Pennsylvania. *Id.* at 47.

Grandfather further testified that Mother has failed to remedy her instability and erratic behavior since her return from Puerto Rico. Grandfather explained that Mother is no longer allowed to visit his home because she "always starts an argument, starts yelling and screaming[.]" N.T., 6/21/16, at 35. When Grandfather informed Mother that she could no longer visit, she became violent and attacked him. *Id.* Grandfather recalled, "[Mother] started pushing me and she says if you don't let me in, I'm going to beat you up. She spit in my face and she says as a matter of fact, I'm going to have somebody beat you up." *Id.* at 35-36. Because Mother is no longer allowed to visit his home, Grandfather insists that Mother obtain custody of Child in a public place, such as a park or shopping center. *Id.* at 10, 37. Nonetheless, Mother continues to arrive at Grandfather's home seeking custody of Child. *Id.* at 12, 34-35.

- 10 -

Grandfather described an incident on June 18, 2016, after Mother informed him that she would pick up Child "at a specific place[.]" *Id.* at 82. Mother stated that she would call Grandfather when she arrived at the exchange location. *Id.* Instead, Mother went directly to Grandfather's home, demanded to see Child, and even called the police. *Id.* at 35, 82. Grandfather reported that Mother does not appear to have a place to live, other than sleeping occasionally at the home of Grandfather's sister. *Id.* at 46.

Further, L.C. ("Grandmother") testified that Mother has often been late to her visits with Child and failed to attend some visits entirely. For example, Grandmother testified that Mother missed visits on April 2, 2016, April 3, 2016, April 9, 2016, April 10, 2016, April 16, 2016, April 17, 2016, and April 23, 2016. N.T., 6/21/2016, at 92; Exhibit GP-2 (Calendar of Visits). On April 18, 2016, Mother arrived for a visit at 9:10 p.m., after Child was asleep. *Id.* at 92; Exhibit GP-2 (Calendar of Visits).

The record supports the trial court's decision to award primary physical and sole legal custody of Child to Grandparents. The testimony presented during the hearing establishes that Mother has a history of instability and erratic behavior. More concerning, Mother has a history of neglecting Child and placing her in danger, as demonstrated by the fact that Mother left Child alone to wander a beach in Puerto Rico. Mother appears to have made little progress in terms of remedying these issues. Mother is uncooperative and

hostile. Mother also fails to attend her visits with Child consistently, and she barely visited with Child at all during April of 2016. The court was well within its discretion when it concluded that Mother lacks the stability necessary to care for Child and to ensure her best interests. Accordingly, we affirm the trial court's July 19, 2016 order awarding primary physical and sole legal custody of Child to Grandparents and awarding partial physical custody to Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2017